UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL DOUGLAS ALLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>ST HELENA POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 18-cv-04592-EMC<br><br>**ORDER OF SERVICE AND PARTIAL DISMISSAL**<br><br>Docket No. 10 |

## I.    INTRODUCTION

Karl Douglas Allen, formerly an inmate at the Napa County Jail and Napa State Hospital, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court reviewed his complaint and dismissed it with leave to amend. His amended complaint is now before the court for review under 28 U.S.C. § 1915A. This order directs service of process as to some Defendants and dismisses some claims and other Defendants.

## II.    BACKGROUND

Mr. Allen's original complaint provided the following information: Mr. Allen was arrested on July 31, 2016, in St. Helena, California, and placed in the Napa County Jail. On January 10, 2017, he was committed by the superior court to Napa State Hospital to restore his competency to stand trial. He eventually was released from the state hospital and returned to the county jail, where he pled guilty to unspecified crimes. He was released from custody on April 25, 2018.

The amended complaint alleges the following:

Mr. Allen was arrested on July 31, 2016 in St. Helena, California. During the course of the

arrest, St. Helena police officer Ramon Jovel used a taser twice on Mr. Allen "without just cause." Docket No. 10 at 1-2. Mr. Allen removed the taser darts from his back each time. *Id.* at 2. Officer Jovel, along with John Perez (a Woodland police officer who was off-duty and not in uniform), Jonathan Bodner (a man from whom Mr. Allen had been renting a room) and William Monroy[1] then tackled Mr. Allen in "a coordinated sneak attack." *Id.* Once they had Mr. Allen pinned to the ground, "they were strangling" him and he felt a sharp pressure and pain on the side of his neck that later developed into a slow-healing wound. *Id.* Mr. Allen "suspect[s] that . . . a needle or syringe may have been used to inject some sort of toxin." *Id.* While he was handcuffed and "laying unmoving face-down" on the ground, officer Jovel pepper-sprayed him in the face "without just cause." *Id.*

There was not probable cause to arrest Mr. Allen for any reason. He "was perfectly calm and peaceful at the moment that officer Jovel contacted [him. He] was not engaged in any sort of criminal activity," and "followed every command given" by officer Jovel. *Id.* at 9. The officers did not tell Mr. Allen that he was being placed under arrest. *Id.*; *see also id.* at 2.

False statements were made in the police reports for the events that took place on July 31, 2016, although Mr. Allen does not know who made the false statements. "[E]ither false witnesses and false victims lied to the police, or the police falsified documents claiming that the so-called witnesses and victims said things which they did not. [Mr. Allen] cannot be certain at what point the falsifications took place." *Id.* at 3.

Given the extent of the false statements made against him and the fact that a St. Helena police officer asked Mr. Allen days before his arrest who he "planned on selling [his] computer hard-drive to – the computer hard-drive that was given to [Mr. Allen] by his former employer QN Electric and may have classified data relating to the Navy and DoD projects which they were involved in contained on it – suggests to [Mr. Allen] that some greater power may have

---

[1] Mr. Allen states that the fourth assailant "was a plain-clothed individual whom [he] cannot positively identify without seeing him again in person, who appears to have been operating in collusion with the corrupt officers, and is likely William Monroy." Docket No. 1 at 1. But elsewhere in the amended complaint, Mr. Allen affirmatively states that Mr. Monroy "unlawfully attempted to tackle" him and helped to pin him to the ground. *Id.* at 2.

intimidated or coerced those individuals into falsifying documents," and that same "greater power" convinced them that Mr. Allen "was attempting to engage in illegal and potentially treasonous activity by selling classified data." *Id.* at 14. Those same "such powers may have organized the attack against [Mr. Allen] so that he would be forced to abandon [his] property," including the hard drive. *Id.* Mr. Allen was contacted by telephone several times "by some agency that would not identify itself, and referred to [him] as a 'person of interest.' That is language that is indicative of a federal agency." *Id.* Based on the foregoing, Mr. Allen "suspect[s] that a federal agency or multiple federal agencies may ultimately be responsible for the attacks" on him and the falsification of documents. *Id.* He reported his suspicions to the Naval Criminal Investigations Service and the Department of Defense Inspector General's Office, both of which launched investigations. *Id.* Mr. Allen asks that the Court "launch an investigation of its own using the Federal Marshals" if it can, or acquire the results of the Navy and DoD investigations for use as evidence in this case. *Id.* at 15.

After his arrest, Mr. Allen was sent to Napa County Jail. He was kept in "solitary confinement" in Napa County Jail for about five months before being committed to Napa State Hospital and then for about three months after he was returned to the jail from the hospital. Docket No. 10 at 9-10. Mr. Allen has "no way of knowing who was responsible for unlawfully placing [him] in solitary confinement, and keeping [him] in the inhumane and unsanitary conditions." *Id.* at 10.

At Napa State Hospital, Mr. Allen was involuntarily medicated, which was improper because he did not do or say anything to indicate he was a threat to himself or others during his stay at the hospital. *Id.* at 10-11. Drs. Hamilton, Metzger, and Maqsood falsified documents to claim that Mr. Allen made statement that he had not made; this was done "as an excuse to engage in their sadistic obsession to unnecessarily administer overdoses of deadly drugs." *Id.*

Mr. Allen attempts to plead a *Monell* claim against the City of St. Helena with these allegations: In addition to his arrest on July 31, 2016, Mr. Allen had encountered officer Jovel on December 21, 2015, when Mr. Allen reported that he thought he had been drugged at his company Christmas party and someone may have tried to kill him. *Id.* at 12. Officer Jovel laughed and

3

said, "'you're just paranoid,'" and officers distorted information in the police reports. *Id.* There are "documented stories reported by the local news that Officers from the St. Helena Police Department have admitted to falsifying documents in citations and arrests," and St. Helena "has a history of lying to federal officials and misappropriating funds received by the State and Federal governments. These facts indicate that there is an established policy and/or culture of corruption, abuse, and falsifying documents within City of St. Helena, including within their Police Department." *Id.*

Mr. Allen attempts to plead a *Monell* claim against Napa County with these allegations: "[T]here is an established policy and culture of abusing the citizens who are held in custody at the jails throughout Napa County." *Id.* at 13. "Napa County has an established policy to encourage its Public Defenders to help diminish credibility of innocent victims of police abuse whom they have been appointed by the Superior Court to represent." *Id.*

### III. DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*

4

1  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must proffer

2  "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

3  A.    Excessive Force During The Arrest

4  Claims of excessive force during an arrest are analyzed under the reasonableness standard

5  of the Fourth Amendment.  *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018).

6  "'[T]he question is whether the officers' actions are objectively reasonable in light of the facts and

7  circumstances confronting them, without regard to their underlying intent or motivation.'"  *Id.*

8  (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

9  The amended complaint alleges that Mr. Allen was tased, tackled, strangled, and pepper-

10 sprayed during his arrest on July 31, 2016, while he offered no resistance.  Liberally construed, the

11 amended complaint states a cognizable § 1983 claim against St. Helena police officer Jovel,

12 Woodland police officer Perez, Mr. Bodner, and Mr. Monroy for using excessive force on Mr.

13 Allen that day.  Although Mr. Bodner and Mr. Monroy apparently were private citizens, the

14 allegations that they took part in tackling and subduing Mr. Allen during the arrest are sufficient,

15 with liberal construction, to treat them as state actors under the joint action test, which "is met

16 where private persons are 'willful participant[s] in joint activity with the State or its agents' that

17 effects a constitutional deprivation."  *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997).

18 Similarly, even if officer Perez was considered a private citizen rather than a police officer at the

19 time the force was used – as suggested by the allegation that he was both off-duty and not in

20 uniform – the allegation that he took part in tacking and strangling Mr. Allen during the course of

21 the arrest is sufficient, with liberal construction, to treat him as a state actor under the joint action

22 test.  Mr. Allen will be required to provide current addresses for Mr. Monroy so that he may be

23 served with process.

24 B.    False Arrest

25 The Fourth Amendment requires that an arrest be supported by probable cause.  *Atwater v.*

26 *City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an

27 arrest is unlawful unless there is probable cause to support it).  An arrest is supported by probable

28 cause if, under the totality of the circumstances known to the arresting officer, a prudent person

would have concluded that there was a fair probability that the defendant had committed a crime. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). To prevail on a § 1983 claim for false arrest, a plaintiff must show that there was no probable cause for his arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

Mr. Allen alleges that his arrest on July 31, 2016, was unlawful and also alleges that the four men who attacked him "worked together as a team in violating [his] 4th Amendment right not to be subjected to unreasonable arrest." Docket No. 10 at 3. Liberally construed, the amended complaint states a cognizable § 1983 claim against St. Helena police officer Jovel, Woodland police officer Perez, Mr. Bodner, and Mr. Monroy for unlawful arrest. As with the excessive force claim, the allegations that the four men worked as a team to arrest Mr. Allen is sufficient, with liberal construction, to treat even the private parties as state actors under the joint action test. *See Johnson*, 113 F.3d at 1119.

C. False Report

A person has a "constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001).

Even with liberal construction, the amended complaint does not state a claim for a due process violation against anyone based on a false police report.[2] Mr. Allen simply does not know who made the false statements. He alleges that the police reports contain false statements, but explicitly pleads that he "cannot be certain at what point the falsifications took place," and then guesses that maybe it was the arresting officer, or the supervisor, or two other officers mentioned in the report "who were somehow involved," or maybe "false witnesses and false victims." Docket No. 10 at 3. His mere speculation that one or more people in a group of people is responsible for a falsity do not present "enough facts to state a claim to relief that is plausible on

---

[2] The amended complaint is rambling. The alleged falsities appear to be that Allen's room smelled of chemicals, that Allen was using methamphetamine, that Allen had approached a family and yelled at them, that he had started drinking and smoking marijuana in excess after losing his job, that Allen struck or attempted to strike officer Jovel, that officer Jovel warned Allen to "stop" before tasing Allen, that Allen entered a field and was told to exit, that Allen resisted, and that Allen threatened violence against the EMT crew.

6

its face" against any one of those people. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. A claim that one among many people violated a plaintiff's rights is not sufficient to hale all of them into court so that a plaintiff can later figure out who the wrongdoer is. *See* The Wagstaffe Group Practice Guide: Federal Civil Procedure Before Trial, § 15-I[B][2] ("the plaintiff should not simply sue any and all persons who might conceivably be liable. . . . [S]uing a defendant without a reasonable and legal factual investigation into that defendant's potential liability may result in sanctions, even if suing such a defendant does not amount to malicious prosecution.") (citing Fed. R. Civ. P. 11).

The due process claim for a false report is dismissed. Further leave to amend will not be granted because it would be futile in that the Court already explained the need to identify the persons who made the false statements, and Mr. Allen was unwilling or unable to do so. *See* Docket No. 7 at 4 (the complaint "fails to state who specifically made false statements/reports and fails to describe the false information, so it cannot be determined that a claim is stated against anyone."). If, at some future point in time, Mr. Allen figures out who made the false statements, he can then move to file a second amended complaint but it is clear that he does not have the information to allege such a claim now.

D.  <u>*Monell* Claim Against City of St. Helena</u>

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations and internal quotation marks omitted). For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir.

2012).

Mr. Allen alleges that there is "an established policy and/or culture of corruption, abuse, and falsifying documents within City of St. Helena, including within their Police Department." Docket No. 10 at 12. With regard to his allegations of a policy of "corruption" and "abuse," the allegations are simply too conclusory to state a *Monell* claim. The order of dismissal with leave to amend cautioned Mr. Allen that it is not sufficient to merely allege that a policy existed, and that he needed to "allege the specific policy, custom or practices" of the municipality. Docket No. 7 at 9. Yet his amended complaint alleges mere conclusions – a policy of corruption and abuse -- devoid of any factual support plausibly showing his entitlement to relief on the *Monell* claim. With regard to the falsified documents, Mr. Allen does not allege that any individual employee of the City of St. Helena committed a violation of Mr. Allen's constitutional rights by making false statements – to the contrary, he alleges that he does not know who made the false statements. He fails to allege a *Monell* claim against the City of St. Helena for a policy of "falsifying documents" because his allegations plainly show he does not whether the false statements that allegedly harmed him were made by City of St. Helena employees or other persons. He does not allege facts that plausibly suggest the City of St. Helena's policy of falsifying documents was the moving force behind an alleged constitutional violation. *See Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.") The *Monell* claim against the City of St. Helena is dismissed. Further leave to amend is not granted because it would be futile: the Court already explained what was needed to allege a *Monell* claim, but Mr. Allen was unable or unwilling to make such allegations.

E.  The "Unknown Federal Agent(s) and/or Agencies"

Mr. Allen fails to state a claim against the persons/entities he refers to as "unknown federal agent(s) and/or agencies." Docket No. 10 at 14. He suspects that an unknown federal agent and/or agencies was the moving force behind his arrest and the false report by trying to convince local authorities that Mr. Allen "was attempting to engage in illegal and potentially treasonous activity by selling classified data." *Id.*

8

The amended complaint does not proffer "enough facts to state a claim to relief that is plausible on its face" against any one of those people or entities. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. According to the amended complaint, no one ever identified himself/herself as a federal agent; rather, he just suspects that federal agents or agencies were behind his arrest. That is not enough to bring his "right to relief above the speculative level." *Id.* at 550. Moreover, his theory as to why the unidentified federal agents would have wanted to have him arrested by local law enforcement officers makes little sense because federal law enforcement officials could have simply arrested him rather than directed local law enforcement officials to arrest him if he was selling classified data or engaging in treasonous activity. Also, the amended complaint does not identify any particular person or entity that could be a defendant for this claim.

Because the amended complaint does not state a facially plausible claim for relief, the Court need not decide whether there even could be a *Bivens* cause of action for the alleged wrong. The case of *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 396 (1971), "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). The Supreme Court has recognized a *Bivens* claim in only three cases: *Bivens* (4th Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (5th Amendment Due Process Clause gender discrimination); and *Carlson v. Green*, 446 U.S. 14, 17-19 (1980) (8th Amendment inadequate medical treatment). "These three cases -- *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). The Supreme Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1848 (citation omitted).

The "claim" regarding "unknown federal agent(s) and/or agencies" is dismissed without leave to amend.

F.  Dismissal of Improperly Joined Defendants

Under Federal Rule of Civil Procedure 20(a)(2), all persons may be joined in one action as

9

defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." "A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims made no effort to show that the 24 defendants had participated in the same transaction or series of transactions or that a question of fact was common to all defendants). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." *Id.* (citing 28 U.S.C. § 1915(g)). "Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach. As stated by one district court judge: 'there can be no hard and fast rule, and that the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the several claims] against them.'" 7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (3d ed. 2001) (citation omitted).

Here, the amended complaint has a serious joinder problem. Officers Jovel and Perez, and Messrs. Bodner and Monroy are sued for false arrest and excessive force during that arrest. They are not identified as defendants for the claims about the conditions at the Napa County Jail or Napa State Hospital. The only defendants identified for the claims about the conditions at the jail and hospital are Napa County, Dr. Hamilton, Dr. Metzger, and Dr. Maqsood. The claims against this latter group of Defendants for conditions at the jail and hospital are not "with respect to or arising out of the same . . . series of transactions or occurrences" as the arrest and excessive force claims against officers Jovel and Perez, and Messrs. Bodner and Monroy. *See* Fed. R. Civ. P.

10

20(a)(2)(A). There also are not "question[s] of law or fact common" to the false arrest/excessive force defendants and the other Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). The Defendants for the claims related to the Napa County Jail and the Napa State Hospital are not properly joined with the false arrest/excessive force Defendants.

Dismissal of the entire action is not necessary, however, as the improper joinder problem can be solved by merely dismissing or severing the improperly joined parties. *See* Fed. R. Civ. P. 21. The court must conduct a prejudice analysis, including potential statute of limitations problems, before selecting dismissal over severance. *See Rush v. Sport Chalet, Inc.,* 779 F.3d 973, 975 (9th Cir. 2015). The statute of limitations for a § 1983 claim filed in California is two years. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1. Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years for a plaintiff who is in prison "for a term less than for life." *See* Cal. Civ. Proc. Code §§ 352.1, 357. A continuously incarcerated plaintiff thus has four years to bring his action. None of Mr. Allen's claims would be time-barred by dismissal of the improperly joined defendants because those claims appear to be based on events occurring after his arrest on July 31, 2016. Mr. Allen appears to be several months away from the expiration of the statute of limitations deadline for him to file a new § 1983 action asserting claims about the jail and hospital. Additionally, pursuing his claims in separate actions is more likely to help than hurt Mr. Allen because he will have extreme difficulty responding to a dispositive motion from the different groups of Defendants if he pursues all of his various claims in a single action. This action has not progressed beyond the pleading stage, so there is no effort that will have been wasted in this case. For these reasons, the Court finds that there would be no prejudice to Mr. Allen due to the dismissal of the improperly joined defendants and therefore selects dismissal over severance. Accordingly, the court will dismiss all the defendants for the claims regarding the conditions at the Napa County Jail and Napa State Hospital. Those dismissed Defendants are Napa County, Dr. Hamilton, Dr. Metzger, and Dr. Maqsood. The dismissal of the improperly joined defendants is without prejudice to Mr. Allen filing new actions asserting claims against the dismissed parties. (This is not to say that the claims against the dismissed parties are meritorious, but simply that those claims must be pursued in a

11

separate action, if at all.)

**IV.     CONCLUSION**

1.      The amended complaint, liberally construed, states cognizable § 1983 claims against St. Helena police officer Ramon Jovel, Woodland police officer John Perez, Jonathan Bodner, and William Monroy for excessive force and false arrest. All other defendants and claims are dismissed.

2.      The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint, and a copy of all the documents in the case file upon the following defendants:

- St. Helena police officer Ramon Jovel
- Woodland police officer John Perez
- Jonathan Bodner

The address for Mr. Bodner is Apt. 3, 1356 Sulphur Springs Avenue, St. Helena, CA 94574.

3.      No later than **November 1, 2019,** Plaintiff must file a notice providing an address at which William Monroy may be served with process. Failure to provide this information will result in the dismissal of this Defendant.

4.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **January 24, 2020,** Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **February 21, 2020**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.      If Defendants wish to file a reply brief, the reply brief must be filed and

served no later than **March 6, 2020**.

    5.    Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, they are seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

    6.    All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

    7.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

    8.    Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the

Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED**.

Dated: October 8, 2019

_____
EDWARD M. CHEN
United States District Judge